Merrick, P.J.
Plaintiff Sonogram of New England, Inc. (“Sonogram”) is a New Hampshire corporation engaged in the business of ultrasound tests and muscu-loskeletal diagnosis by means of such tests. The particular ultrasound test at issue here, a sonogram, is, in the words of the motion judge, a “picture shown on a video display terminal that is obtained by bouncing sound waves off an object”
Upon a written referral from a Massachusetts licensed chiropractor, Sonogram performed ultrasound diagnostic testing on Juan Hernandez, who had Personal Injury Protection (“PIP”) coverage under a Massachusetts automobile policy purchased from defendant Plymouth Rock Assurance Corporation (“Plymouth Rock”). Sonogram’s claim for payment for its services under that PIP coverage was denied by Plymouth Rock. The facts are precisely the same as those recited in *149 another case we decide today, Sonogram of New England, Inc. v. Amica Insurance Co., 2002 Mass. App. Div. 146 (“Sonogram v. Amica”).
As in the preceding case, Sonogram brought this action as an “unpaid party” under G.L.c. 90, §34M to recover PIP payment for its services, plus attorney’s fees and costs. Plymouth Rock moved for summary judgment on the very same grounds advanced by the insurer in Sonogram v. Amica; to wit (1) that Sonogram is collaterally estopped from maintaining this action, (2) that a sonogram is not a medical treatment or procedure listed in G.L.c. 90, §34A for which PIP payments are available, and (3) that Sonogram is not a “provider” entitled to maintain a §34M action because it is not licensed in Massachusetts to provide “medical services.”
Plymouth Rock’s summary judgment motion was denied. In a written decision, the motion judge ruled that prior judgments in the Salem case and in Sonogram v. Amica were not entitled to any preclusive effect which would bar Sonogram’s action in this case, and that Plymouth Rock had not established as a matter of law that a sonogram procedure ordered by a Massachusetts licensed chiropractor was not a medical service covered by the PIP statute. The case is now before us on a Dist/Mun. Cts. E.AD.A., Rule 5 report by the motion judge of his summary judgment ruling.[1]
1. Our decision today in Sonogram v. Amica, ante, is dispositive of Plymouth Rock’s initial claim that Sonogram is collaterally estopped by a certain decision of the Salem District Court (the “Salem case”) from maintaining this or any other action to recover PIP benefits for sonogram diagnostic tests.[2] The Salem case does not have any preclusive effect
Plymouth Rock further argues that preclusive effect should be given to a written opinion by a judge deciding four consolidated small claims cases (the “Small Claims cases”), which involved claims by Sonogram against Premier Insurance Company for PIP benefits.[3] “Factors supporting the conclusion that a decision is *150 final for the purpose of preclusion are that the parties were fully heard, the judge’s decision is supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact reviewed.” Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146, 149 (1988).
The judge in the Small Claims cases found for Premier after trial, and it may be inferred that the “parties were fully heard.” Second, the judge specified that his decision was on the sole ground that Sonogram, not being a licensed medical provider, lacked standing to bring an action under §34M. Thus the decision satisfies the “reasoned opinion” requirement listed in Tausevich to qualify a prior decision as preclusive. As to the third requirement, however, Sonogram could not have appealed the decision adverse to it in the Small Claims cases because Sonogram brought those actions and a small claims plaintiff has no right of appeal. G.L.c. 218, §23. See Fijal v. Anderson, 49 Mass. App. Ct. 903 (2000); Moon v. Trust Ins. Co., 2000 Mass. App. Div. 89, 91. Thus, as the decision in the Small Claims cases was not “subject to review or ... in fact reviewed,” Tausevich v. Board of Appeals of Stoughton, supra at 149, the decision is not entitled to any preclusive effect.[4]
Plymouth Rock’s motion for summary judgment on collateral estoppel grounds was properly denied.
2. We turn to Plymouth Rock’s second argument that PIP benefits are unavailable for sonogram or ultrasound diagnostic testing expenses.
G.L.C. 90, §34A defines the medical coverage portion of “personal injury protection” as:
all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.
It is Arnica’s reasoning that because an “x-ray” is the only diagnostic test mentioned in §34A, all other procedures are necessarily excluded by the rule of statutory interpretation “expressio unius est exclusio alteriud’ (to express or include one is to exclude others). That maxim is not, however, to be observed “slavishly” where its observance would undermine or frustrate legislative intent Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 620 (1997); Bagley v. Illyrian Gardens, Inc., 401 Mass. 822, 825 (1988). “The no-fault law was adopted to reduce the number of small motor vehicle tort cases being entered in the courts of the Commonwealth, to provide a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses, and to address the high cost of motor vehicle insurance in the Commonwealth.” Flanagan v. Liberty Mut. Ins. Co., 383 Mass. 195, 198 (1981). It would not be consistent with those goals to exclude from “medical services” such things as laboratory tests and evolving diagnostic procedures such as CT scans or MRIs — or ultrasound diagnostic tests — and require the injured party to bring a tort action to recover their cost Moreover, to the extent that such expenses were not recoverable under PIP coverage, the limitation on a recovery for pain and suffering under G.L.c. 231, §6D might not apply to the claim. See Murphy v. Bohn, 377 Mass. 544 (1979); Chipman v. Massachusetts Bay Transp. Auth., 366 Mass. 253 (1974).
Nor is it necessary that the provider of the “medical services” defined in G.L.c. 90, §34Abe in a profession requiring a license. The expression “medical services” which is used in §34A is broad enough to include the services of a “trained attendant rendered under the direction and control of a physician.” Klapac’s Case, 355 *151 Mass. 46, 49 (1968). The question of whether the services here were “medical services” and whether they were reasonable and necessary for the particular patient involved and his type of injury are questions of fact[5] Summary judgment for Plymouth Rock on this ground was properly denied.
3. Finally, Plymouth Rock argues that Sonogram does not have standing to bring an action directly against an insurer for PIP benefits. Paragraph 4 of G.L.c. 90, §34M, which authorizes suit to recover PIP benefits and attorney’s fees, provides in pertinent part:
In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter.
The “benefits” referred to in the fourth paragraph of §34M are the PIP benefits defined in §34A. As we have noted in the previous section, there is a question of fact as to whether the services here constituted §34A “medical services.” Contrary to Plymouth Rock’s argument, there is no requirement in §34M or in the case law that the unpaid party be a licensed medical professional as long as the service provided by that party are included in §34A The statutory term “unpaid party” has been treated as including not just the insured policyholder, pedestrians, and passengers, but also unpaid suppliers of medical services. See, e.g., Trust Ins. Co. v. Bruce at Park Chiropractic Clinic, supra; Galena v. Commerce Ins. Co., 2001 Mass. App. Div. 222; Knight v. Trust Ins. Co., 1998 Mass. App. Div. 184.
Insurers and health care providers are much better able to contest the value of medical services than are individual patients. The patient wants to be removed from the collection process as soon and as fully as possible.’ [citation omitted] Undoubtedly, it is for this reason that a provider who has not received full payment of his bill is included within the §34M definition of an ‘unpaid party,’ entitled to bring suit directly against the insurer and, if successful, recover attorney’s fees.
Ny v. Metropolitan Prop. & Cas. Ins. Co., 1998 Mass. App. Div. 179, 181, aff'd 51 Mass. App. Ct. 471 (2001).
Accordingly, the denial of Plymouth Rock’s motion for summary judgment is affirmed. The case is returned to the Woburn District Court for further proceedings consistent with this opinion.
So ordered.

 While the motion judge has framed a single issue in his report as to whether a sonogram is a medical procedure compensable under G.L.C. 90, §34M, our review encompasses all grounds advanced by Plymouth Rock in its motion for summary judgment and all issues relevant to the judge’s denial of that motion. The reason is that Rule 5 authorizes the report of a decision or ruling to this Division rather than merely the report of a single issue arising from that decision or ruling. Rule 5, which governs the “Report of a Case for Determination” to this Division, states that “[p]ursuant to G.L.c. 231, §108, a judge may, in his or her discretion, report a judgment, interlocutory or other ruling, finding or decision for determination by the Appellate Division.” Section 108 of G.L.c. 231 provides that “[i]f a single justice is of die opinion that an interlocutory finding or order made by him ought to be reviewed by the appellate division before any further proceedings in the trial court, he may report the case for that purpose....”

 The present case was heard on summary judgment by a judge in the Woburn District Court after the Lowell District Court decision in Sonogram v. Amica, ante, but owing to the vagaries of appellate record preparation, this Woburn case was argued before us first Plymouth Rock has contended here that the Sonogram v. Amica decision by the Lowell court itself had a preclusive effect on the issue of the preclusive effect of the Salem case. We acknowledge that the effect of an otherwise preclusive decision is not undermined by the fact that an appeal of the decision is pending. O’Brien v. Hanover Ins. Co., 427 Mass. 194, 200-201 (1998). However, we do not think preclusive effect need be given to a decision on appeal by the court before which the appeal is pending as that court has the power to reverse the earlier decision. That is indeed what we have done today.

 In Sonogram v. Amica, ante, the defendant-insurer correctly waived the argument that the Small Claims cases had any preclusive effect

 The fact that Sonogram would not be considered “without an appellate remedy” for purposes of denial of extraordinary relief under G.L.c. 211, §3, Trust Ins. Co. v. Bruce at Park Chiropractic Clinic, 430 Mass. 607, 610 (2000), does not require a different result

 None of this is to suggest that Sonogram is qualified to establish the necessity and reasonableness of its charges by the procedures set forth in G.L.c. 233, §79G. See Phelps v. MacIntyre, 397 Mass. 459, 462-463 (1986).